No.  _____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

*In re* PESTICIDE ACTION AND AGROECOLOGY NETWORK NORTH AMERICA, ALIANZA NACIONAL DE CAMPESINAS, CALIFORNIA RURAL LEGAL ASSISTANCE FOUNDATION, FARMWORKER ASSOCIATION OF FLORIDA, FARMWORKER JUSTICE, GREENLATINOS, LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT, NATURAL RESOURCES DEFENSE COUNCIL, PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, and UFW FOUNDATION,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

## PETITION FOR A WRIT OF MANDAMUS

PATTI A. GOLDMAN (WSBA No. 24426)
NOORULANNE JAN (WSBA No. 61024)
EARTHJUSTICE
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 681-9842

GREGORY LOARIE (CA Bar No. 215859)
EARTHJUSTICE
1 Sansome St., Ste. 1700
San Francisco, CA 94104
(415) 217-2000

*Attorneys for Petitioners*

# TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT ............................................................1

STATEMENT OF JURISDICTION.........................................................................2

ISSUE PRESENTED .............................................................................................4

STATEMENT OF THE CASE .................................................................................4

I. The Two Overlapping Statutes Regulating Pesticide Use. ...............................4

II. The OP Petition Seeks Expeditious EPA Action to Protect Children, Workers, and Communities from Harm to Their Health. ...............................................6
    A. OPs Pose Unacceptable Risks of Acute Poisonings and Serious Neurodevelopmental Harm. ...........................................................6
    B. EPA's 2015-2020 OP Risk Assessments Find Pervasive and Severe Human Health Risks of Concern............................................8

III. EPA CONTINUES TO DELAY PROTECTING THE PUBLIC FROM UNACCEPTABLE RISKS FROM THE OPS.............................................12

PETITIONERS HAVE STANDING........................................................................14

ARGUMENT ......................................................................................................17

I. A Writ of Mandamus Is Warranted to Compel EPA to Take Action to Protect People from Unacceptable Harm from OP Pesticides...................................17
    A. EPA Has a Duty to Take Action on the OP Petition...........................17
    B. EPA's Delay is Unreasonable. ......................................................18
        1. EPA's Delay in Acting on the OP Petition to Protect Public Health Violates the Rule of Reason. .......................................19
        2. The Serious Harms to Human Health Make EPA's Delay Unreasonable...........................................................................21
        3. No Higher, Competing Priorities Justify EPA's Delay. ...........25

II. The Court Should Establish Deadlines for EPA to Revoke Tolerances for Unsafe Uses and Cancel Uses That Pose Unreasonable Adverse Effects.....26

CONCLUSION ...................................................................................................30

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Rivers*,
372 F.3d 413 (D.C. Cir. 2004) ............................................................................. 19

*In re Cmty. Voice*,
878 F.3d 779 (9th Cir. 2017) ....................................................................... *passim*

*Cutler v. Hayes*,
818 F.2d 879 (D.C. Cir. 1987) ............................................................................. 24

*Friends of the Earth v. Laidlaw Env't Servs.*,
528 U.S. 167 (2000) ............................................................................................. 14

*League of United Latin Am. Citizens v. Regan*,
996 F.3d 673 (9th Cir. 2021) ....................................................................... *passim*

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (2025) ............................................................................................ 16

*NRDC v. EPA*,
38 F.4th 34 (9th Cir. 2022) ............................................................................. 3, 29

*NRDC v. EPA*,
658 F.3d 200 (2d Cir. 2011) .............................................................................. 7, 9

*NRDC v. EPA*,
735 F.3d 873 (9th Cir. 2013) ............................................................................... 16

*In re NRDC*,
956 F.3d 1134 (9th Cir. 2020) ..................................................................... *passim*

*In re PANNA*,
532 F. App'x 649 (9th Cir. 2013) ............................................................... 3, 27, 28

*In re PANNA*,
798 F.3d 809 (9th Cir. 2015) ....................................................................... *passim*

*In re People's Mojahedin Org. of Iran,*
  680 F.3d 832 (D.C. Cir. 2012)........................................................20

*Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.,*
  740 F.2d 21 (D.C. Cir. 1984).........................................................25

*Salmon Spawning & Recovery All. v. Gutierrez,*
  545 F.3d 1220 (9th Cir. 2008) ......................................................16

*Telecomm. Rsch. & Action Ctr. v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984).................................................*passim*

*United Farm Workers of Am. v. EPA,*
  592 F.3d 1080 (9th Cir. 2010) .........................................................3

*In re United Mine Workers,*
  190 F.3d 545 (D.C. Cir. 1999).......................................................26

**Statutes**

<u>Administrative Procedure Act</u>

5 U.S.C. § 555(b) ............................................................................17

5 U.S.C. § 706(1) ..........................................................................2, 18

<u>Federal Insecticide, Rodenticide and Fungicide Act</u>

7 U.S.C. § 136(bb) .......................................................................4, 27

7 U.S.C. § 136(bb)(2)........................................................................6

7 U.S.C. § 136a(a).............................................................................4

7 U.S.C. § 136a(c)(5)(D) ...................................................................4

7 U.S.C. § 136a(g) .............................................................................6

7 U.S.C. § 136a(g)(1)(C) .................................................................19

7 U.S.C. § 136d(b) .......................................................................5, 27

7 U.S.C. § 136n(b) .............................................................................3

iv

Federal Food, Drug and Cosmetic Act

21 U.S.C. § 346a(a)(1) ....................................................................5

21 U.S.C. § 346a(b) ........................................................................5

21 U.S.C. § 346a(b)(2)(A)(i) .......................................................5, 26

21 U.S.C. § 346a(b)(2)(A)(ii) .........................................................5

21 U.S.C. § 346a(b)(2)(C)(i)(II) .....................................................6

21 U.S.C. § 346a(c) ........................................................................5

21 U.S.C. § 346a(d)(4) ..................................................................27

21 U.S.C. § 346a(d)(4)(A)(i)-(iii) ..................................................17

21 U.S.C. § 346a(h) .......................................................................3

All Writs Act, 28 U.S.C. § 1651 ....................................................2

Pesticide Registration Improvement Act of 2022, Pub. L. 117-328, §
    711(a), 136 Stat. 4459 (Dec. 29, 2022) ....................................12, 13

**Other Authorities**

40 C.F.R. § 155.40(a) .....................................................................6

87 Fed. Reg. 41310 (July 12, 2022) ..............................................12

# TABLE OF ACRONYMS

APA          Administrative Procedure Act

EPA          U.S. Environmental Protection Agency

ER          Excerpts of Record

FFDCA          Federal Food, Drug and Cosmetic Act

FIFRA          Federal Insecticide, Rodenticide and Fungicide Act

FQPA          Food Quality Protection Act

HHRA          Human Health Risk Assessment

NAMs          New Approach Methodologies

OP(s)          Organophosphate(s)

PANNA          Pesticide Action and Agroecology Network North America

PCUN          Pineros y Campesinos Unidos del Noroeste

PID          Proposed Interim Registration Review Decision

PPE          Personal Protective Equipment

USGS          U.S. Geological Survey

INTRODUCTION AND RELIEF SOUGHT

This Petition for a Writ of Mandamus seeks an order directing Respondent U.S. Environmental Protection Agency ("EPA") to act on a 2021 Petition asking EPA to protect people from serious harms from organophosphate ("OP") pesticides. Every year, this class of pesticides causes acute poisonings of workers and people near the fields. In addition, EPA has found, based on extensive analyses of peer-reviewed scientific studies, that low-level exposures to OP pesticides during pregnancy are linked to learning and behavioral disorders in children. After EPA made that finding in 2015, it released a series of risk assessments concluding that specific OPs pose what the agency deemed to be "unacceptable" risks to people in food and drinking water, to workers, and to communities when the OPs sprayed in the air drift to nearby homes and schools. But despite finding unacceptable risks for 11 of the OPs at issue in this case between 2015-2020, EPA failed to act to protect people from these unacceptable risks.

In 2021, Petitioners Pesticide Action and Agroecology Network North America *et al*. (collectively "PANNA") petitioned EPA to protect people from OPs by: (1) ending food uses that are unsafe; and (2) ending uses or putting mitigation measures in place to protect workers and communities from unacceptable OP risks. EPA has not done so. Rather than move expeditiously to protect people from these unacceptable risks, EPA has continually missed its internal deadlines for registration review of the OPs, which would address the issues raised in the OP Petition. EPA obtained voluntary mitigation from OP registrants for some, but not all, of the worst risks from four of the OPs, but not the other eight. While EPA

1

proposed a near-total ban on one OP and a phase-out of numerous uses of another in 2024, it has not finalized the proposals, as it repeatedly had promised to do.

This lawsuit asks the Court to put an end to EPA's unreasonable delays by granting a writ of mandamus ordering EPA to issue a full and final response to the Petition for each of the twelve OPs. Specifically, PANNA asks the Court to direct EPA either to deny the OP Petition upon finding the OP uses safe, or grant the Petition and take the required regulatory action within one year. PANNA also asks the Court to set deadlines: (1) 90 days to grant or deny the OP Petition for the three OPs subject to 2024 proposed decisions—acephate, dimethoate, and malathion— and an additional one year for any required regulatory actions; and (2) October 1, 2026 to grant or deny the OP Petition for the remaining nine OPs with an additional one year for any required regulatory actions. PANNA further asks the Court to retain jurisdiction and require quarterly status reports until EPA makes final decisions subject to judicial review for each of the OPs.

## STATEMENT OF JURISDICTION

This mandamus petition asks the Court to issue a writ of mandamus to "compel agency action unlawfully withheld or unreasonably delayed" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). This Court has jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651, authorizing federal courts to issue all writs appropriate "in aid of their respective jurisdictions," where challenges to any final action by EPA would lie in the Circuit Courts of Appeal. *In*

re *Cmty. Voice*, 878 F.3d 779, 783 (9th Cir. 2017); *see also In re PANNA*, 532 F. App'x 649, 650 (9th Cir. 2013).

This Court would have jurisdiction to review EPA's final decision resolving the OP Petition and any tolerance revocation, registration review, and cancellation actions. EPA actions on petitions to revoke tolerances and its tolerance revocation rules are reviewable in the courts of appeals. *See* 21 U.S.C. § 346a(h) (tolerance revocations); *League of United Latin Am. Citizens v. Regan*, 996 F.3d 673 (9th Cir. 2021) ("*LULAC*") (petition to revoke tolerances). EPA registration actions following a public hearing, which includes public comment, are similarly reviewable in the courts of appeals. *See* 7 U.S.C. § 136n(b) (actions following public hearing); *United Farm Workers of Am. v. EPA*, 592 F.3d 1080, 1082-83 (9th Cir. 2010) (public comment satisfies public hearing requirement); *see also NRDC v. EPA*, 38 F.4th 34, 44 (9th Cir. 2022) (registration review decision reviewable by court of appeals under 7 U.S.C. § 136n(b)). This Court therefore has jurisdiction to issue a writ of mandamus compelling EPA to take unreasonably delayed actions sought in the OP Petition. *In re NRDC*, 956 F.3d 1134, 1138 (9th Cir. 2020) (petition to cancel registration).[1]

---

[1] Venue is proper because five of the petitioners have their principal places of business in this Circuit. *See* Standing Decls. for PANNA, Alianza Nacional de Campesinas ("Alianza"), California Rural Legal Assistance Foundation, Pineros y Campesinos Unidos del Noroeste ("PCUN"), and UFW Foundation in Volume 14 of the Excerpts of Record ("ER") compiling relevant documents at 14-ER-2861, 2898, 2985, 3007, 3015.

## ISSUE PRESENTED

Whether EPA's failure to act on a 2021 Petition to protect children, workers, and communities from OP pesticide uses that pose unacceptable risks constitutes an unreasonable delay warranting a mandamus order from this Court setting deadlines for EPA: (1) to issue a final decision on the OP Petition for each of the 12 OPs; (2) to revoke food tolerances for unsafe OP food uses; and (3) to cancel or modify OP registrations to protect workers and communities from unreasonable adverse health effects?

## STATEMENT OF THE CASE

This statement of the case summarizes: (1) the controlling statutes; (2) the OP Petition seeking to compel EPA to protect children, workers, and communities from unacceptable risks found in EPA's risk assessments; and (3) EPA's continued unreasonable delays.

I.  THE TWO OVERLAPPING STATUTES REGULATING PESTICIDE USE.

EPA regulates pesticides under two, overlapping statutes, the Federal Insecticide, Rodenticide and Fungicide Act ("FIFRA") and the Federal Food, Drug and Cosmetic Act ("FFDCA"). Under FIFRA, EPA must "register" each pesticide use before a pesticide may generally be sold or used in the United States. 7 U.S.C. § 136a(a). To register a pesticide use, EPA must determine that the use "will not generally cause unreasonable adverse effects on the environment," which includes human health. *Id.* § 136a(c)(5)(D); *see id.* § 136(bb) (definition of "unreasonable

adverse effects"). EPA has the authority to cancel a pesticide registration if the pesticide use "causes unreasonable adverse effects." *Id.* § 136d(b).

Under the FFDCA, EPA establishes "tolerances" that set the maximum residue of a pesticide allowed on food. 21 U.S.C. § 346a(b) & (c). Foods with pesticide residues that exceed or lack a tolerance are adulterated and unlawful. *Id.* § 346a(a)(1). EPA may "establish or leave in effect a tolerance for a pesticide chemical residue in or on a food only if the Administrator determines that the tolerance is safe." *Id.* § 346a(b)(2)(A)(i). EPA has the authority and duty to revoke a tolerance if it finds a pesticide residue would not be safe. *Id.* § 346a(b)(2)(A)(i).

Congress substantially amended both FIFRA and the FFDCA when it enacted the 1996 Food Quality Protection Act ("FQPA") to address a seminal 1993 National Academy of Sciences report criticizing EPA for failing to protect children from pesticides based on the foods they eat, their play, and sensitive stages of their development. The FQPA amended the FFDCA's definition of "safe" to mean "the Administrator has determined there is a reasonable certainty that no harm will result from aggregate exposure" to the pesticide in food, drinking water, and residential uses for the general population and each age group of infants and children. *Id*. § 346a(b)(2)(A)(ii), § 346a(b)(2)(C)(ii)(I) & (II). EPA must consider available information concerning "the special susceptibility of infants and children," including "neurological differences between infants and children and adults, and effects of in utero exposure to pesticide chemicals," and it must apply "an additional tenfold margin of safety . . . to take into account potential pre- and

post-natal toxicity and completeness of the data with respect to exposure and toxicity to infants and children." *Id*. §§ 346a(b)(2)(C)(i)(II), (D).

Congress incorporated the FQPA's new food safety standard into FIFRA by amending FIFRA's "unreasonable adverse effects" definition to include "a human dietary risk from residues that result from a use of a pesticide in or on any food inconsistent with the [FQPA] standard." 7 U.S.C. § 136(bb)(2). Congress also directed EPA to conduct a registration review of each pesticide every 15 years to ensure "each pesticide registration continues to satisfy the FIFRA standard for registration." *Id*. § 136a(g); *see* 40 C.F.R. § 155.40(a).

## II. THE OP PETITION SEEKS EXPEDITIOUS EPA ACTION TO PROTECT CHILDREN, WORKERS, AND COMMUNITIES FROM HARM TO THEIR HEALTH.

Petitioners filed the OP Petition in 2021 to move EPA to act on its own findings of unacceptable health risks documented in OP risk assessments released between 2015-2020, most in 2015-2016. The OP Petition asks EPA: (1) to end all OP uses that EPA cannot find safe in food, drinking water, and spray drift; and (2) to end all uses or put mitigation in place to protect workers and communities from unreasonable adverse health risks from the OPs. Pet. (1-ER-10-11, 60).

### A. OPs Pose Unacceptable Risks of Acute Poisonings and Serious Neurodevelopmental Harm.

Organophosphates are a class of widely used pesticides, derived from chemicals originally developed by the Nazis as nerve agents for warfare. After

World War II, they were adapted to be used as commercial insecticides. *NRDC v. EPA*, 658 F.3d 200, 205 (2d Cir. 2011).

Each OP has its own registered uses with some used on a wide variety of fruits and vegetables and others used mostly on feed crops like corn and wheat. The U.S. Geological Survey ("USGS") has a pesticide use database that shows the geographical location by county and amounts of each OP's usage on agricultural crops. Decl. of Hetty Chin ¶¶ 7-12 (May 19, 2025) (14-ER-3027-30). While OP usage has declined over time, this mandamus petition seeks action on one dozen OPs that are still used extensively in agriculture.

OPs cause two types of health harms. First, short-term exposures cause acute poisonings by suppressing cholinesterase, an enzyme necessary for the proper transmission of nerve impulses throughout the body. Poisoning symptoms include headaches, dizziness, nausea, vomiting, convulsions, and, in extreme cases, respiratory failure. Decl. of Dr. Jennifer Sass ¶¶ 9-12 (June 2, 2025) (14-ER-2934-66); Pet. (1-ER-7, 22). Every year, acute poisonings associated with OP exposures are reported by workers, their families, and others who live near places where OPs are applied. Decl. of Dr. Margaret Reeves ¶¶ 14-16 (May 22, 2025) (14-ER-2983-3005). The reported poisonings are merely the tip of the iceberg, given widespread under-reporting due to factors like fear of retaliation. *Id*. ¶ 14 (14-ER-2989).

Second, published, peer-reviewed studies from leading universities over the past two decades have correlated *in utero* OP exposures to statistically significant elevations in children's risk of autism, attention deficit hyperactivity disorder, and other learning and behavioral impairments. Sass Decl. ¶¶ 19-24, 34-36 (14-ER-

2942-46, 2951-53). Upon conducting extensive reviews of this scientific evidence, EPA and its Scientific Advisory Panel confirmed that low-level exposures during pregnancy to one OP, chlorpyrifos, is linked to learning and behavioral disorders. EPA retained the children's tenfold safety factor to account for this neurodevelopmental harm to children, but it and the SAP questioned whether the resulting exposures would protect children from developmental neurotoxicity. *LULAC*, 996 F.3d at 683-88, 700-01. In 2015, EPA extended this finding to the entire class of OPs, and in 2016, EPA responded to comments and confirmed that *in utero* OP exposures are correlated with learning and behavioral disorders in children. Updated Literature Review on Neurodevelopmental Effects & FQPA Safety Factor Determination for OPs (Dec. 29, 2016) (2-ER-214-391). This led EPA to retain the children's tenfold children's safety for all OPs due to neurodevelopmental harm and uncertainties about exposures that cause such harm. *Id*.

> B.  EPA's 2015-2020 OP Risk Assessments Find Pervasive and Severe Human Health Risks of Concern.

Between 2015-2020, EPA released preliminary human health risk assessments ("HHRAs") for 11 of the 12 OPs at issue in this case, documenting myriad unsafe exposures that require revocation of tolerances and cancellation of uses or mitigation to comply with the law. 6-ER-1344. Petitioners submitted comments on the draft risk assessments, urging EPA to act to protect workers and communities from the documented harm. 6-ER-1345; 7-ER-1670.

For each route of exposure, EPA's risk assessments compare estimated exposures to the acceptable risk level EPA has set based on acute poisoning risks and safety factors. The OP Petition summarized the unacceptable risks found in the risk assessments, drawing from a concurrently released database that compiled EPA's risk assessment findings. Decl. of Dr. Rashmi Joglekar ¶¶ 7-34 (June 23, 2025) (14-ER-3040-60). The risk assessments documented unacceptable risks through dietary exposures (food, drinking water, or both), to workers, and to communities from spraying in the air, as shown in the table below. *Id.*; Pet. (1-ER-30).

| | Exposure Pathways EPA Found to be of Concern | | | |
|---|---|---|---|---|
| **OP Name** | **Food and/or Drinking Water** | **Spray Drift** | **Occupational Pesticide Handlers** | **Farmworkers** |
| **Acephate** | ● | ● | ● | ● |
| **Bensulide** | ● | ● | ● | ● |
| **Chlorethoxyfos** | ● | N/A | ● | N/A |
| **Diazinon** | ● | ● | ● | ● |
| **Dichlorvos/DDVP**[2] | ● | N/A | ● | N/A |
| **Dimethoate** | ● | ● | ● | ● |
| **Ethoprop** | ● | ● | ● | N/A |
| **Malathion** | ● | ● | ● | ● |
| **Naled** | ● | ● | ● | ● |
| **Phorate**[3] | - | - | ● | - |

[2] This petition treats DDVP/naled as one OP because DDVP has little remaining agricultural use and degrades into naled. 2020 DDVP HHRA at 19-20 (5-ER-994-95); *see NRDC v. EPA*, 658 F.3d 200 (2d Cir. 2011) (EPA arbitrarily eliminated the children's tenfold safety factor for DDVP).

[3] EPA has not released a human health risk assessment for phorate since 1999. Its 1999 phorate risk assessment found risks of concern to occupational handlers, which were not mitigated in the OP re-registration process completed in 2006. Pet.

| | | | | |
|---|:---:|:---:|:---:|:---:|
| **Phosmet** | ● | ● | ● | ● |
| **Terbufos** | ● | N/A | ● | N/A |
| **Tribufos** | ● | ● | ● | ● |
| ● = an exposure pathway associated with risks of concern, according to EPA's human health risk assessments N/A = an exposure pathway not expected for this pesticide based on authorized application methods | | | | |

All the 2015-2020 OP human health risk assessments documented unacceptable dietary, particularly for children, either in food or drinking water or both. Joglekar Decl. ¶¶ 11-15 (14-ER-3044-48); Pet. (1-ER-32-37). Any risk above EPA's safety level fails to meet the FQPA reasonable certainty of no harm standard and requires revocation of the tolerances.

EPA's 2015-2020 risk assessments also found that people face unacceptable risks from the drift of pesticides sprayed aerially or through ground spraying. Children face the highest risks because they roll around on the ground and put their hands in their mouths more often than adults. EPA modeled distances up to 300 feet around the fields that would need no-spray buffers to prevent toxic drift to schools, homes, playfields, and other places people gather. Joglekar Decl. ¶¶ 16-19 (14-ER-3049-50); Pet. (1-ER-37-39).[4]

All the 2015-2020 OP risks assessments documented unacceptable risks to workers. For workers handling pesticides, who face the greatest risks, EPA found extremely high risks of concern using the currently required personal protective equipment ("PPE"), like coveralls and respirators, and engineering controls (like

---

(1-ER-13 n.2).

[4] In response to a 2009 petition, EPA acknowledged in 2014 that it has a legal duty protect children from spray drift, but chose to put protections in place over time through the registration review process. Reeves Decl. ¶¶ 30-31 (14-ER-2995-96).

enclosed cabs and closed mixing/loading systems) and often even if the maximum possible PPE or engineering controls were required. Joglekar Decl. ¶¶ 20-27 (14-ER-3051-56); Pet. (1-ER-52-56).

Finally, EPA's OP risk assessments documented unacceptable risks to farmworkers entering fields to weed, irrigate, pick crops, and perform other tasks. EPA identified the number of days after spraying before a farmworker can safely enter the field, sometime as long as 30 days. Joglekar Decl. ¶¶ 28-30 (14-ER-3056-57); Pet. (1-ER-58-59 ).

In the face of these pervasive and serious health risks, the OP Petition asks EPA to revoke food tolerances as soon as possible and to take all other necessary actions to protect public health by October 1, 2022, the statutory registration review deadline then in effect. The OP Petition specifically asks EPA to: (1) end all OP uses that EPA cannot find safe in food, drinking water, and spray drift; and (2) end all uses or put mitigation in place to protect workers and communities from unreasonable adverse OP risks. Pet. (1-ER-10-12, 60). The Petition also asks EPA to develop a safety level that will protect children from neurodevelopmental harm, but not to delay protecting people from demonstrated harms using an acute poisoning endpoint while it does so. 1-ER-39-52. In addition, the OP Petition urges EPA to impose needed public health protections before it completes other legal obligations, which would take additional time. 1-ER-52, 60.

III.    EPA CONTINUES TO DELAY PROTECTING THE PUBLIC
        FROM UNACCEPTABLE RISKS FROM THE OPS.

Two weeks after PANNA filed the OP Petition, EPA released an updated
registration review schedule that moved in the wrong direction. EPA projected that
it would miss the 2022 statutory deadline for all but three of the OPs. Registration
Review Schedule (Dec. 26, 2021) (8-ER-1717-37). PANNA objected to these
delays. Letter to EPA (Feb. 1, 2022) (8-ER-1762-65). In response, EPA attributed
the delays to resource constraints and its plans to review additional data. Letter
from EPA Assistant Administrator (March 25, 2022) (8-ER-1760-61).

In July 2022, EPA solicited public comments on the OP Petition. 87 Fed.
Reg. 41310 (July 12, 2022). PANNA submitted comments urging EPA to act
expeditiously to place to protect public health by revoking tolerances as soon as
possible for unsafe food uses without waiting for ecological risk assessments,
benefits assessments, and risk-benefit balancing determinations that are legally
irrelevant to tolerance actions. Proceeding with tolerance revocations would also
avoid delays precipitated by protracted negotiations with registrants that typically
precede registration review decisions. PANNA's comments also urge EPA to take
immediate steps to implement much-needed risk mitigation measures to protect
workers. Comments on OP Petition (Sept. 23, 2022) (8-ER-1766-82).

In December 2022, Congress extended the registration review deadline to
October 1, 2026. Pesticide Registration Improvement Act of 2022, Pub. L. 117-
328, § 711(a), 136 Stat. 4459 (Dec. 29, 2022). This law also increased registrant

fees to fund EPA staff reviewing pesticides and relaxed ESA requirements for interim registration review decisions. *See id*. §§ 703-706, 711(b).

In response to PANNA's continued demands, EPA announced in April 2023 that registrants had agreed to require some additional worker protections for four OPs. 9-ER-1784-1802 (EPA announcements and registrant agreements for mitigation measures for diazinon, ethoprop, phosmet, and tribufos). The safeguards, while essential given the unconscionable worker risks, did not address all the worker risks EPA had found to be unacceptable. EPA sought mitigation only for the most serious risks of concern and obtained only partial mitigation even for those risks. Decl. of Anne Katten ¶¶ 24-28 (May 13, 2025) (14-ER-2904-05); PANNA Letter to EPA at 8-9 (July 21, 2023) (8-ER-1755-56).

Over time, it emerged that EPA was delaying action to conduct cell-based tests, called New Approach Methodologies ("NAMs"), to assess developmental neurotoxicity and eliminate the children's safety factor for OPs. While NAMs have been used to assess acute toxicity like eye irritation and skin rashes, leading scientists oppose using NAMs to predict developmental neurotoxicity to the developing fetus because of gaps in biological coverage and because the NAMs have not been validated for this purpose. Sass Decl. ¶¶ 40-48 (14-ER-2954-59). Nonetheless, EPA used NAMs data to eliminate the children's safety factor in revised risk assessments and proposed interim registration review decisions for acephate, dimethoate, and malathion. The acephate proposal came out first. Even with an indefensible elimination of the children's safety factor based on NAMs, EPA found such pervasive risks of concern from drinking water exposures that it

proposed a near-total acephate ban. Acephate HHRA and Proposed Interim

Registration Review Decision ("PID") (11-ER 2127,2129-30, 2280-81). It also

proposed ending a large proportion of dimethoate uses and requiring mitigation for

other uses of dimethoate and malathion. Dimethoate PID (12-ER-2392); Malathion

PID (12-ER-2602-05).

In 2023 and 2024, EPA promised that it would make final interim

registration review decisions for acephate, dimethoate, and malathion by December

2024. Registration Review Schedule (Apr. 17, 2023) (8-ER-1692-1716); EPA

Email Responses to Questions from Farmworker Stakeholders (Apr. 1, 2024) (8-

ER-1740-41). After EPA moved its deadline to 2025, PANNA urged the agency to

finalize these proposals as promised, Letter to EPA Assistant Administrator (Nov.

15, 2024) (8-ER-1738-39), but EPA failed to do so. The most recent schedule,

released in August 2024, calls for final decisions for acephate, dimethoate, and

malathion in 2025, for seven other OPs in 2026, and for two of the OPs in 2027,

after the current statutory deadline. 8-ER-1672-91.

PETITIONERS HAVE STANDING

Petitioners have standing to bring this action. Each petitioner organization

has joined this lawsuit to eliminate harmful human exposures to hazardous

pesticides in furtherance of their missions. 14-ER-2860-64, 2898-2900, 2909-14,

2919-22, 2931-33, 2937-38, 2940-49, 2985-90, 3007-12, 3015-17, 3074-76. *See*

*Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-81 (2000)

(standing where affected interests are germane to organization's purposes).

14

EPA's failure to act on the OP Petition leaves tolerances and registrations in place for harmful OP uses. Workers and people living near the fields face unacceptable acute poisoning risks and exposures during pregnancy that can cause learning and behavioral disorders in their children. Members of Alianza, Farmworker Association of Florida, PANNA, PCUN, and UFW Foundation work on crops, including berries, grapes, cherries, peaches, melons, citrus, tomatoes, bell peppers, cauliflowers, lettuce, hops, and peanuts, in areas where harmful OPs are used. Decls. of Eugenia Economos ¶¶ 10-12 (May 21, 2025) (14-ER-2923-24); G.C. ¶¶ 5-11 (May 21, 2025) (14-ER-2975-78); J.H. ¶¶ 5-8 (May 21, 2025) (14-ER-2980-81); Diego Iniguez-Lopez ¶ 10 (May 23, 2025) (14-ER-3018-19); Decl. A.L. ¶ 5 (Jun 3, 2025) (14-ER-3022); Maria "Ceci" Hinojos Pressey ¶¶ 5-9 (June 3, 2025) (14-ER-3008-10), Mily Trevino-Sauceda ¶¶ 7-8, 10 (May 16, 2025) (14-ER-2864-65); and Alianza Declarants A-B (May 21, 2025) (14-ER-2870-81). EPA allows use of OPs on these crops despite finding that the uses pose unacceptable risks to workers. *See, e.g.*, Economos Decl. ¶¶ 10-12 (14-ER-2923-24) (malathion and dimethoate on tomatoes; dimethoate on bell peppers; phosmet on blueberries); Hinojos Pressey Decl. ¶¶ 7-8 (14-ER-3009) (diazinon on blueberries; ethoprop on hops); 2023 Diazinon HHRA (9-ER-1826-34, 1837-40) (diazinon risks of concern to handlers and farmworkers on blueberries, raspberries, cherries, melons, peaches, strawberries, lettuce and tomatoes); 2024 Acephate PID (11-ER- 2261-67) (acephate drinking water risks of concern for all crops and risks of concern to workers from celery, lettuce, and peanuts); 2015 Dimethoate HHRA (3-ER-596-607, 612-32) (dimethoate food and drinking water risks of concern for toddlers,

including from citrus, and worker risks of concern from use on asparagus, broccoli, cauliflower, citrus, melons, and pears, all crops proposed for cancellation in 2024 PID (12-ER-2392). The farmworkers want to avoid being exposed to OPs because of concerns about adverse health effects from pesticide use. *See* 14-ER-2862-66, 2868-71, 2877-81, 2883-88, 2923-27, 2974-78, 2979-81, 3008-13, 3014-18. It is clear and far from speculative that members of these farmworker organizations group are harmed by EPA's failure to act to protect people from harmful OP exposures. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 708-09 (2025).

In addition, people who live near fields where OPs may be used are concerned about their families' exposure to OPs through spray drift and drinking water, which are beyond their control. Hinojos Pressey Decl. ¶ 13 (14-ER-3011); Iniguez-Lopez Decl. ¶ 11 (14-ER-3019-20); Hays Decl. (June 10, 2025) (14-ER-2967-69); DeLorenzo Decl. (June 12, 2025) (14-ER-2970-73); *see NRDC v. EPA*, 735 F.3d 873, 878-79 (9th Cir. 2013) (organization's members face credible threat of harm when they cannot prevent exposure to pesticide registered by EPA).

These injuries would be redressed by a favorable decision ordering EPA to act on the OP Petition and pursue tolerance revocations for unsafe uses and use cancellations and mitigation to eliminate unreasonable adverse effects on human health. Alternatively, if EPA uses a safety level that fails to protect children, PANNA would be able to challenge EPA's failure to protect their members once EPA makes its final decisions. *See Salmon Spawning & Recovery All. v. Gutierrez,* 545 F.3d 1220, 1226–29 (9th Cir. 2008) (standing exists where requested steps could protect litigants' interests).

ARGUMENT

I.    A WRIT OF MANDAMUS IS WARRANTED TO COMPEL EPA
      TO TAKE ACTION TO PROTECT PEOPLE FROM
      UNACCEPTABLE HARM FROM OP PESTICIDES.

In determining whether to grant mandamus relief, this Court must determine

whether the agency is under a duty to act and whether the delay in doing so is

unreasonable. *Cmty. Voice*, 878 F.3d at 784. The answer to both questions is yes.

A.    EPA Has a Duty to Take Action on the OP Petition.

PANNA satisfies the threshold requirement that EPA has a duty to respond

to the OP Petition under federal pesticide laws and the APA. In response to a

petition for tolerance revocations, like this one, EPA has a duty either to

promulgate a regulation modifying or revoking the tolerances or to issue an order

denying the petition. FFDCA, 21 U.S.C. § 346a(d)(4)(A)(i)-(iii). Taking none of

these actions is not an option. *See In re PANNA*, 798 F.3d 809, 813 (9th Cir. 2015)

(petitioner is entitled to a "final ruling" on its petition—*i.e.*, a "formal action to

grant or deny it.").

The OP Petition also seeks cancellation of registrations for OP uses that pose

unreasonable risks to workers, whose exposures are regulated under FIFRA, not

FFDCA. While FIFRA has no statutory provision requiring responses to petitions,

binding Circuit precedent holds that EPA has a duty under the APA, 5 U.S.C. §

555(b), to respond to the petition "within a reasonable time." *NRDC*, 956 F.3d at

1136. Faced with petitions to protect the public from serious health harms, "EPA

has a clear duty to act under the APA," *Cmty. Voice*, 878 F.3d at 784, and this

Court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

> ### B.    EPA's Delay is Unreasonable.

To determine whether an agency has unreasonably delayed action, this Court applies the so called "*TRAC* factors" established by the D.C. Circuit in *Telecomm. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). *See Cmty. Voice*, 878 F.3d at 783-84; *PANNA*, 798 F.3d at 814. The *TRAC* factors relevant to EPA's unreasonable delay are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; [and]
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by the delay.[5]

---

[5] The court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (cleaned up). The second *TRAC* factor also merits little discussion because Congress has supplied no timetable for responding to FIFRA and FFDCA petitions. *NRDC*, 956 F.3d at 1140. FIFRA has a 2026 deadline for completing registration review, which addresses both health and ecological risks, but FIFRA's registration review provision states that "[n]othing in this subsection shall prohibit the Administrator from undertaking any other review of a pesticide." 7 U.S.C. § 136a(g)(1)(C). In *LULAC*, 996 F.3d at 692-93, this Court held FIFRA's registration review process did not give it discretion to delay acting on an FQPA tolerance revocation petition.

18

*TRAC*, 750 F.2d at 80. Under the *TRAC* factors, EPA's delay in protecting people from serious health harms, as requested in the OP Petition, is unreasonable.

### 1. EPA's Delay in Acting on the OP Petition to Protect Public Health Violates the Rule of Reason.

Under the rule of reason, reviewing courts look at the length of the delay, but "a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers,* 372 F.3d 413, 419 (D.C. Cir. 2004). The delay's reasonableness hinges on the context and consequences with this Court giving agencies less latitude to delay taking actions to protect people from harm, as explained in the next section.

PANNA filed the OP Petition in 2021, seeking overdue action to protect people from unacceptable risk findings in EPA risk assessments released between 2015-2020, most in 2015-2016. Despite their alarming risk findings, the risk assessments had been sitting on the proverbial shelf with no EPA action.

While EPA has taken some steps, it has moved far too slowly and addressed only a fraction of the extreme risks from OPs. In 2023, EPA convinced pesticide registrations to amend labels to add mitigation for the most serious worker risks from four OPs. 9-ER-1784-87. However, EPA sought mitigation for only a small slice of the risks and it obtained only some of that requested mitigation. Katten Decl. ¶¶ 24-28 (14-ER-2904-05); July 2023 Letter (8-ER-1755-56). For example, for diazinon, risks of concern remain for many types of applications, and the registrants did not commit to lengthen re-entry intervals to prevent exposing farmworkers to risks of concern from performing various tasks, including on

19

orchards, berries, melons, peaches, strawberries, lettuce, and tomatoes. July 2023 Letter (8-ER-1748, 1755-56). For phosmet, some severe risks of concern from groundboom and airblast applications remain unaddressed. *Id*. For ethoprop, pesticide handlers still face severe risks of concern from liquid products. *Id*. And for tribufos, severe risks of concern remain for groundboom applications, and for farmworkers 15-20 days after applications. *Id*. In 2024, EPA proposed interim registration review decisions for acephate, dimethoate, and malathion, which would end almost all acephate and many dimethoate uses, but it failed to finalize the proposals in 2024, as it had promised to do. *See supra* at 14.[6]

EPA's inaction leaves PANNA "stuck in administrative limbo; it enjoys neither a favorable ruling on its Petition nor the opportunity to challenge an unfavorable one." *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012) (State Department's delay in resolving petition to revoke terrorist listing insulated decision from judicial review). The pace of EPA's decisional process here defies the rule of reason. EPA began finding unacceptable risks from the OPs a decade ago. When EPA failed to protect against the risks, PANNA filed the OP Petition. And still years later, EPA has not put the needed public health protections in place.

---

[6] In 2022-2023, the registrants voluntarily cancelled registrations of chlorpyrifos-methyl, which had been used on stored grains. EPA-HQ-OPP-2010-0119-0078. In April 2025, EPA issued an interim registration review decision for dicrotophos, which had fewer risks of concern than most OPs. EPA-HQ-OPP-2008-0440-0090.

2. The *Serious* Harms to Human Health Make EPA's Delay Unreasonable.

The third *TRAC* factor provides that delays in the sphere of economic regulation become "less tolerable when human health and welfare are at stake," and the fifth *TRAC* factor directs the court to "take into account the nature and extent of the interests prejudiced by the delay." *TRAC*, 750 F.2d at 80. Under these factors, EPA's delay is intolerable because of the severe and pervasive human health harms from OP exposures.

The OP Petition presents evidence of serious health risks from OPs and asks EPA to take urgent action to protect children, workers, and communities against ongoing harm. In addition to causing acute pesticide poisonings every year, low-level *in utero* exposures have been linked to autism and attention deficit disorders. Pet. (1-ER-8-9, 39-52).

This Court has deemed EPA delays unreasonable when serious harm to human health is at stake. For example, in *PANNA*, 798 F.3d at 814, this Court found EPA's delay unreasonable once the agency found that an OP posed serious health dangers in drinking water and to workers. Given the human health interests prejudiced by EPA's delay, the Court had "little difficulty concluding that it should be compelled to act quickly to resolve the administrative petition." *Id*. In *NRDC*, 956 F.3d at 1142, this Court concluded EPA's delay in addressing OP exposures "severely prejudiced" children because of the risks of neurodevelopmental harm. And *LULAC* explained, 996 F.3d at 691:

once the EPA has become aware, through a petition or otherwise, of genuine questions about the safety of an existing tolerance, the EPA has its own continuing duty under the FFDCA to determine whether a tolerance that was once thought to be safe still is, and here the EPA's own studies and pronouncements still in effect show that it regards chlorpyrifos as harmful at levels below the existing tolerances.

EPA has recently backtracked, taking the position that protecting against exposures that cause acute poisonings from three individual OPs might protect children from neurodevelopmental harm. Importantly, EPA still acknowledges the correlation between *in utero* OP exposures and learning and behavioral disorders, but for some OPs, EPA now contends that such neurodevelopmental harm might not occur at exposures below those that cause acute poisonings. *See* 2023 Acephate HHRA (11-ER-2130, 2152-54). This new approach is hotly contested by EPA's own scientific advisors and leading scientists, because it is based on NAMs, which have not been validated for this purpose and have significant gaps in coverage that prevent them from predicting the development of learning and behavioral disorders *in utero*. Sass Decl. ¶¶ 39-49 (14-ER-2953-59). If EPA persists in weakening children's protections based on its application of unvalidated science in its final decisions, PANNA has the right to challenge those decisions in court. EPA's delay is obstructing PANNA's exercise of that right.

Even with reduced protection for children, EPA found unacceptable acephate risks from drinking water contamination and to workers who apply the pesticide or enter fields after spraying, and to toddlers from spray drift. 2023 Acephate HHRA (11-ER-2127-38). EPA proposed a near-total acephate ban. PID

22

(11-ER-2280-81). Its delay in finalizing this ban is continuing to expose people to unacceptable risks.

For dimethoate, EPA eliminated two safety factors and yet still proposed to end many dimethoate uses, including on fruits, vegetables, nuts, and field crops, because of risks to wildlife. PID (12-ER-2392). These bans would reduce human exposures to dimethoate that EPA's 2015 risk assessment, which retained the full suite of safety factors, found pose unacceptable risks to people. 2015 Dimethoate HHRA (3-ER-566-67, 596-607) (unacceptable risks in drinking water, including for broccoli, cauliflower, corn and citrus); (3-ER-612-18) (unacceptable risks to handlers on vegetables, melons, corn, citrus, nuts, and nurseries), (3-ER-619-32) (unacceptable risks to farmworkers tending to vegetables, citrus, orchards, nurseries). *See also* 2016 Malathion HHRA (4-ER-712, 717-18, 748-51, 776, 784-88) (unacceptable risks from drinking water and to workers). EPA's delay is continuing to expose people to uses that EPA proposed eliminating and is preventing PANNA from challenging its failure to end other uses as well.

Due to their widespread use, it is difficult to avoid exposure to OPs in food, drinking water, and the air around fields where OPs are sprayed. EPA found pervasive risks of concern through these exposures. For example, EPA found unacceptable food risks from ethoprop, which is used on vegetables, potatoes, sugar cane, and bananas, at 780% safe levels for the general U.S. population and 1800% safe levels for infants, who face grave risks from exposures in baby banana food. Ethoprop HHRA (3-ER-639, 672-73). And EPA found drinking water risks over 10,000% of EPA's level of concern for infants from ethoprop, as well as from

terbufos, bensulide, and diazinon. *Id.*; Bensulide HHRA(2-ER-396-97, 427-29); Terbufos Dietary Exposure Assessment (6-ER-1263-70); *see also* Diazinon HHRA (3-ER-509, 539-40); Naled HHRA (5-ER-1073).

For workers who apply OPs, EPA's 2015-2020 risk assessments found unacceptable risks under current label mitigation for all OPs, often an order of magnitude greater than the level EPA deemed safe. Pet. (1-ER-52-56). In some instances, the risks of concern would persist even with the maximum PPE possible. *See, e.g.*, Bensulide HHRA (2-ER-444-47); Naled HHRA (5-ER-1075, 1154-58). To prevent such risks to the people who apply OPs, EPA would likely need to end aerial spraying, require closed cabs, or ban the OP entirely, and farmworkers would need to stay out of the fields for longer periods of time. EPA obtained mitigation in 2023 for some of these risks for four OPs, but is allowing unacceptable risks to continue even for those four and obtained no mitigation for the other eight OPs. *See supra* at 13, 19-20.

EPA also has not required the no-spray buffers around schools, homes, and playgrounds for bensulide, dimethoate, malathion, and naled that it deemed necessary in 2015-2020 to prevent unacceptable risks. Pet. (1-ER-33-34). People who live near the fields lack the ability to protect themselves from exposure to pesticide drift. "Lack of alternative means of eliminating or reducing the hazard necessarily adds to unreasonableness of a delay." *See Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987).[7]

---

[7]EPA still allows use of phosmet on pick-your-own farms despite finding in 2016 that phosmet poses unacceptable risks to children for 19 to more than 30 days after

"When the public health may be at stake, the agency must move expeditiously to consider and resolve the issues before it." *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984). The longer EPA waits, the more children and workers will be exposed to unacceptable risks from OPs. EPA has offered "no acceptable justification" for its delay in preventing harmful exposures to children and workers. *PANNA*, 798 F.3d at 814.

### 3. No Higher, Competing Priorities Justify EPA's Delay.

The *TRAC* factors direct the Court to consider the effect of expediting the delayed action on other competing priorities. 750 F.2d at 80. EPA has many competing duties, but it cannot point to any work that should take higher priority than protecting people from harm from OP exposures.

In *PANNA*, 798 F.3d at 814, this Court issued a writ of mandamus once EPA found that chlorpyrifos posed such significant threats to drinking water that a nationwide ban may be justified. In *NRDC*, 956 F.3d at 1141-42, this Court rejected EPA's argument that completing registration review for other pesticides was a higher priority than acting on adverse health findings for the OP at issue in that case.

---

being sprayed on pick-your-own farms growing blueberries, cherries, apples, peaches, and plums. 2016 Phosmet HHRA at 4-5, 48-49 (5-ER-1226-27); *see also* 2016 Malathion HHRA (4-ER-829, 873) (risks of concern at pick-your-own farms); 2024 HHRA (12-ER-2469, 2509, 2513 (malathion still used on pick-your-own farms).

EPA has no competing priorities that justify delaying action on the Petition. As the D.C. Circuit stated in *In re United Mine Workers*, 190 F.3d 545, 554 (D.C. Cir. 1999), "[h]owever many priorities the agency may have, and however modest its personnel and budgetary resources may be, there is a limit to how long it may use these justifications to excuse inaction in the face of the congressional command to act." Given the pervasive risks posed by the OPs to human health, EPA's delay cannot be justified by any other priorities.

II.   THE COURT SHOULD ESTABLISH DEADLINES FOR EPA TO REVOKE TOLERANCES FOR UNSAFE USES AND CANCEL USES THAT POSE UNREASONABLE ADVERSE EFFECTS.

PANNA respectfully asks this Court to issue a writ of mandamus directing EPA to take full and final action on the OP Petition to remedy its unreasonable delay. It is well settled that: "when there has been an unreasonable delay in rulemaking, courts have power and discretion to enforce compliance within some form of timeline." *Cmty. Voice*, 878 F.3d at 788.

Specifically, PANNA asks the Court to order EPA to issue a full and final response to the OP Petition as to each OP by either denying the Petition or granting the Petition and taking the required regulatory action. Notably, where, as here, a petition to revoke tolerances presents substantial evidence that a pesticide is unsafe, EPA cannot deny the petition without finding the pesticide safe. *LULAC*, 996 F.3d at 691-92, 695-96. And if EPA cannot find the pesticide safe, it must revoke the tolerances through a rulemaking process. 21 U.S.C. § 346a(b)(2)(A)(i)

26

(EPA may "leave in effect a tolerance . . . only if the Administrator determines that the tolerance is safe."); *id*. § 346a(d)(4) (tolerance rulemaking process).

Similarly, if a pesticide use presents unacceptable risks to workers, the use is unlawful and subject to cancellation unless EPA finds it reasonable taking into account the full costs and benefits of the pesticide use. 7 U.S.C. § 136(bb); *see id*. 136d(b) (cancellation process). If EPA cannot find OP uses safe or it determines they pose unreasonable adverse effects to workers, EPA must grant the petition as to such uses and take the statutorily required actions: tolerance revocation for food uses and modification or cancellation of registrations for worker risks.

Accordingly, PANNA seeks court deadlines that go further than requiring a written response to the OP Petition and that include the regulatory actions compelled by that response. This Court has ordered EPA to take such actions previous unreasonable delay cases. *PANNA*. 798 F.3d at 811 (deadline to deny petition or issue proposed revocation rule); *PANNA*, 840 F.3d at 1014 (deadline for final revocation rule); *Cmty. Voice*, 878 F.3d at 788 (deadlines for proposed and final rules); *NRDC*, 956 F.3d at 1143 (deadlines to act on petition and if granted, to initiate and complete cancellation proceedings).

This mandamus petition seeks action on 12 OPs at issue in the OP Petition. EPA released proposed interim registration review decisions for three of the OPs in 2024, including acephate for which it proposed a near-total ban due to drinking water contamination. It failed to finalize those decisions in that same year, as promised. Because EPA is so far along, PANNA asks the Court to give EPA a 90-deadline to make final decisions on the Petition for these three OPs and to initiate

any required regulatory actions or finalize the interim registration review decisions, which address additional issues, should EPA choose to proceed in that fashion. PANNA asks the Court to direct EPA to finalize any tolerance revocations, label changes, or use cancellations within one additional year. These deadlines are in accord with those issued by this Court in *PANNA*, 798 F.3d at 811 (five months to respond to petition and propose revocation rule); *PANNA*, 808 F.3d 402 (9th Cir. 2015) (one year for final revocation rule); *Cmty. Voice*, 878 F.3d at 788 (90 days for proposed rule and additional year for final rule); *NRDC*, 956 F.3d at 1143 (90 days either to deny petition or initiate cancellation proceedings with additional year to complete cancellation proceedings).

For the other nine OPs, PANNA asks the Court to order EPA to respond to the OP Petition by October 1, 2026, either by denying the Petition for OP uses it finds safe or by granting the Petition and initiating the required regulatory actions for unsafe uses with a deadline for completing required regulatory actions one year later. The requested October 1, 2026, deadline coincides with the statutory deadline for completing registration review for older pesticides, like the OPs.

To complete registration review, however, EPA must do more than what is needed to act on the OP Petition in two respects. First, the OP Petition asks EPA to revoke tolerances for unsafe food uses. Since EPA establishes tolerances based on a purely health-based standard, EPA must revoke tolerances for unsafe OP uses, regardless of the uses' economic benefits. *See LULAC*, 996 F.3d at 678, 692-93. Because FIFRA's risk-benefit balancing test is inapplicable to food tolerances, EPA does not need to prepare benefits assessments as it does for ecological and

28

worker risks during registration review. Moreover, EPA revokes tolerances through rulemaking, which is less resource-intensive and subject to fewer delays than contested cancellation proceedings. That is why PANNA has urged EPA to revoke tolerances before cancelling registrations for unsafe OP food uses.

Second, the OP Petition focuses solely on risks to human health, while registration review addresses all risks from the pesticide, including ecological risks. While worker risks are subject to FIFRA's risk-benefit standard, EPA was able to obtain voluntary mitigation on an expeditious basis for egregious worker and spray drift risks outside the registration review process.

Giving EPA a deadline of October 1, 2026, to act on the remaining nine OPs is eminently reasonable. Where Congress has established a statutory deadline for more comprehensive action on the OPs, it is appropriate for the Court to order EPA to act by that deadline to reduce serious human health risks. In *NRDC v. EPA*, 38 F.4th 34, 59 (9th Cir. 2022), this Court refused to order EPA to take overdue action before the registration review deadline then in effect because it believed the statutory deadline would serve as a sufficient backstop. Here, however, EPA's most recent registration review schedule indicates that EPA plans to miss the registration review deadline for at least two of the OPs—phosmet and bensulide. 8-ER-1676, 1687. EPA's 2016 risk assessment for phosmet found unacceptable food risks (5-ER-1184, 1223); its 2015 risk assessment for bensulide found drinking water risks 10,000% greater than EPA's risk of concern level and unacceptable worker risks even if maximum PPE were required. 2-ER-396-97, 427-29, 444-47. In other words, the statutory deadline is not serving as a backstop, which justifies

making that deadline a court order for the human health issues presented in the OP Petition.

Finally, to ensure compliance with these deadlines, and given the lengthy history of delay in protection people from harm from the OPs, PANNA respectfully asks the Court to retain jurisdiction "until EPA issues a final order subject to judicial review." *Cmty. Voice*, 878 F.3d at 788; *see also NRDC,* 956 F.3d at 1143 (retaining jurisdiction "until the EPA has taken a final action subject to judicial review"); *LULAC*, 922 F.3d at 443 (granting mandamus and "retain[ing] jurisdiction"). PANNA also asks the Court to order EPA to file status reports every 60 days. *See TRAC*, 750 F.2d at 80-81 (bimonthly status reports).

## CONCLUSION

The Court should respectfully issue a writ of mandamus setting deadlines for EPA to respond to the OP Petition for each of the 12 OPs and to take required regulatory actions.

Respectfully submitted this 25th day of June, 2025.

*/s/ Patti A. Goldman*
PATTI A. GOLDMAN (WSBA No. 24426)
NOORULANNE JAN (WSBA No. 61024)
EARTHJUSTICE
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 681-9842

GREGORY LOARIE (CA Bar No. 215859)
EARTHJUSTICE
1 Sansome St., Ste. 1700
San Francisco, CA 94104
(415) 217-2000

*Attorneys for Petitioners PANNA et al.*

## CERTIFICATE OF COMPLIANCE

This document complies with the page limit of Circuit Rule 21-2(c) because it does not exceed 30 pages, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 21(a)(2)(C) and 32(f). This document also complies with the page/word count conversion formula of Circuit Rule 32-3 because it contains 7251 words. 7251/280 = 25.9.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 25, 2025

*/s/ Patti A. Goldman*
PATTI A. GOLDMAN (WSBA No. 24426)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
pgoldman@earthjustice.org

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 15(c) and Fed. R. Civ. P. 4(i)(1), I

hereby certify that on this 25th day of June, 20225, I caused the foregoing

PETITION FOR A WRIT OF MANDAMUS to be served via certified mail to the

following:

LEE ZELDIN
EPA Administrator
Environmental Protection Agency
Office of the Administrator, Mail Code 1101A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

CRAIG H. MISSAKIAN
U.S. Attorney, Northern District of California
Federal Courthouse
450 Golden Gate Avenue
P.O. Box 36055
San Francisco, CA 94102

PAMELA BONDI
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

*/s/ Patti A. Goldman*
PATTI A. GOLDMAN